UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA POLANCO,<br><br>        Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br><br>        Defendant. | Case No. CV 08-5550 PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I.
## INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). She claims that the Administrative Law Judge ("ALJ") erred when she ignored the functional assessment of treating physician Sean Leoni and when she found that Plaintiff was not credible. (Joint Stip. at 4, 10.) For the reasons discussed below, the Agency's decision is REVERSED and the case is REMANDED for further proceedings.

II.

SUMMARY OF PROCEEDINGS

On April 1, 2004, Plaintiff protectively filed for DIB and SSI. (Administrative Record ("AR") 61-63.) After the Agency denied the applications initially and on reconsideration, she requested and was granted an administrative hearing. (AR 48-60.) On January 22, 2007, Plaintiff appeared with counsel at the hearing and testified. (AR 435-71.) On February 6, 2007, the ALJ issued a decision denying her applications. (AR 13-20.) On July 3, 2008, the Appeals Council denied Plaintiff's request for review. (AR 6-8.) Plaintiff then commenced this action.

III.

ANALYSIS

1.  <u>The ALJ's Failure to Consider the Treating Doctor's Opinion</u>

In her first claim of error, Plaintiff contends that the ALJ's failure to provide any reasons, let alone specific and legitimate ones, for rejecting a treating doctor's opinion compels remand. (Joint Stip. at 5-7.) For the following reasons, the Court agrees.

An ALJ is required to take into account a treating doctor's opinion in formulating her decision as to whether a claimant is disabled. In order to reject a treating doctor's opinion that is contradicted by another doctor's opinion, the ALJ must provide "specific and legitimate" reasons for doing so. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Dr. Sean Leoni, an internist, was one of Plaintiff's treating doctors. He saw her eight times between September 2002 and April 2004, each time preparing and submitting reports for Plaintiff's

Worker's Compensation case.  (AR 206-45.)  Dr. Leoni diagnosed a number of impairments during this period, including hypertension, morbid obesity, gastroesophageal reflux disease, irritable bowel syndrome, and an orthopedic condition.  (AR 242.)  He believed that Plaintiff's reflux disease and irritable bowel syndrome had been "aggravated, accelerated, and lit up" by stress from work and concluded in September 2002 that she was totally temporarily disabled.  (AR 244-45.)

In his final report in April 2004, Dr. Leoni determined that Plaintiff's disabling reaction to emotional stress meant that she should avoid contact with the public or fellow workers, as well as jobs giving rise to stressful situations, such as those involving deadlines, exasperating members of the public, precision, and attention to detail.  (AR 212.)  Dr. Leoni also opined that Plaintiff should have access to a bathroom and should avoid heavy work.  (AR 212.)

The ALJ determined that Plaintiff could perform light work, with "occasional postural activities," meaning, consistent with the vocational expert's testimony, that Plaintiff could perform her past work as a teacher's aide and as a program director.  (AR 18, 19.)  The ALJ did not mention Dr. Leoni at all or explain how, despite Dr. Leoni's findings, Plaintiff was still capable of working as a teacher's aide or program director.  This was error.  The ALJ was not allowed to disregard Dr. Leoni's opinion without providing reasons for doing so.  *See Orn* 495 F.3d at 632 ("Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record.")

The Agency argues that the error was harmless under *Stout v. Comm. Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). (Joint Stip. at 8-9.) It offers its interpretation of the evidence and argues that, since there were several possible interpretations of the evidence, the ALJ's interpretation should be upheld, citing *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). (Joint Stip. at 9.)

The Agency clearly misses the mark here. The ALJ did not provide a different interpretation of Dr. Leoni's submissions--she provided no interpretation. Based on a review of the four corners of the ALJ's decision, it is not clear whether she ever even read Dr. Leoni's reports, never mind considered them in her decision. And the issue here is not one involving lay testimony--which, although competent evidence, does not typically drive a disability determination--as in *Stout*. The ALJ's oversight in this case was the treating doctor's opinion. As the Agency knows, the treating doctor's opinion, all other things being equal, is entitled to deference and often dictates the outcome of a case. For these reasons, the Court concludes that the ALJ's error was not harmless. The Court will not, however, grant Plaintiff's request to credit the treating doctor's opinion and order the Agency to award benefits. Remand for an award of benefits is only warranted in this context where the ALJ failed to provide adequate reasons for rejecting the evidence, there are no outstanding issues that need to be resolved, and it is clear that claimant is entitled to relief. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996.) Plaintiff has not met this standard. As such, the case will be remanded for further proceedings.

2.  The ALJ's Credibility Determination

In her second claim of error, Plaintiff contends that the ALJ failed to provide legally sufficient reasons for concluding that she was not credible. (Joint Stip. at 10-17.) For the following reasons, the Court finds that remand is warranted on this issue as well.

ALJ's are tasked with judging the credibility of witnesses. In making a credibility determination, an ALJ may take into account ordinary credibility evaluation techniques. *Smolen,* 80 F.3d at 1284. Where, as here, a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject the claimant's testimony for specific, clear, and convincing reasons. *Id*. at 1283-84. In making a credibility determination, the ALJ may take into account, among other things, ordinary credibility evaluation techniques and the claimant's daily activities. *Id*. at 1284.

Plaintiff testified that she could not sit for more than 15 minutes or stand for longer than ten or 15 minutes at a time. (AR 446.) She also testified that she could not walk more than two or three blocks and that, after, she would have to lie down for about 15 minutes to rest. (AR 446-48.) Plaintiff explained that she had a lot of pain in her neck and back and that her leg gave way when she walked. (AR 443.) She complained of numbness in both hands and back and knee pain, despite several surgeries. (AR 444-45.) She testified that she could fix a simple meal, bathe, and dress herself, but that she could not bend over. (AR 448.) She reported that her doctors could not put her on pain medication because it affected her blood pressure and acid reflux. (AR 449.)

The ALJ noted Plaintiff's allegations but determined that they were inconsistent with the objective medical evidence. (AR 18.) She offered four reasons supporting her decision that Plaintiff was not credible: 1) Plaintiff had been advised to maintain a gym membership with the goal of weight control, suggesting that she was "capable of maintaining some level of physical activity on a sustained basis"; 2) Plaintiff had stopped taking Vicodin to control her pain; 3) Plaintiff did not receive treatment for her condition after July 2005; and 4) an MRI of the lumbar spine in 2004 "revealed no recurrent canal stenosis, a mild disc protrusion with no significant compromise of the neural elements, and no neural impingement or compromise." (AR 18.) As explained below, the credibility issue needs further development.

The fact that Plaintiff's doctor recommended that she join a gym and work towards losing weight does not undermine Plaintiff's testimony that she was incapable of working due to pain. Plaintiff is 5'-1" tall and weighed between 170 and 200 pounds during most of the time covered by her medical records. (AR 126.) It is hard for the Court to imagine that any doctor would not recommend that Plaintiff lose weight. Further, there is no evidence that Plaintiff ever joined a gym or that she ever exercised. Thus, the fact that her doctor wanted her to exercise and lose weight--and believed that she could-- not undermine Plaintiff's testimony that she was in too much pain to work.

The ALJ's second reason for discounting Plaintiff's testimony-- that she stopped using Vicodin to treat it--is equally unpersuasive. Though, in general, a failure to take pain medication to treat excessive pain is a legitimate reason for discounting a claimant's

6

testimony, *see, e.g., Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999), here, Plaintiff testified that the medication "interfered with" her blood pressure and acid reflux and made her groggy. (AR 449, 451.) The ALJ failed to address these explanations for discontinuing Vicodin. And there is no evidence in the record to contradict them. For this reason, the Court cannot conclude that the ALJ's finding that Plaintiff was exaggerating her claims of pain because she stopped taking Vicodin is supported by the record.

The ALJ's third reason for rejecting Plaintiff's testimony was that she was not receiving medical care in July 2005. (AR 18.) This is a proper reason for questioning a claimant's pain testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). And it is supported by the record. Though Plaintiff was seen for routine medical check-ups in 2005, she did not receive care for her pain and other alleged conditions from 2005-on. (AR 343, 367-83.)

The ALJ's fourth reason for questioning Plaintiff's testimony was that an MRI of the lumbar spine in 2004 "revealed no recurrent canal stenosis, a mild disc protrusion with no significant compromise of the neural elements, and no neural impingement or compromise." (AR 18.) The Court rejects this reason also. The ALJ had previously found that Plaintiff had medically determinable impairments which could be expected to produce some functional limitations. (AR 18.) Having done so, she was not permitted to reject Plaintiff's testimony on the basis that Plaintiff did not have a specified ailment--such as canal stenosis, "compromise of neural elements," or "neural impingement or compromise"--that would support her pain allegations. In appearing to require such evidence, the ALJ was impermissibly substituting her own medical opinion for that of the physicians of record, which is

prohibited. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); *Arquette v. Astrue*, 2010 WL 4916603, at *4 (C.D. Cal. Nov. 24, 2010).

In the end, of the four reasons relied on by the ALJ for finding that Plaintiff was not credible, only one of them is valid on its face, i.e., the fact that Plaintiff did not receive treatment for her alleged condition after July 2005. Though the Court finds this reason to be strong support for the ALJ's credibility determination, it is not clear to the Court whether the ALJ would have found Plaintiff not credible for this reason alone. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (noting that the "relevant inquiry . . . is whether the ALJ's decision remains legally valid," despite errors in the credibility analysis). As such, remand is required on this issue as well. On remand, the ALJ should reconsider the credibility determination. In doing so, she is not limited in her analysis and may consider any factors she deems relevant in determining credibility.[1]

---

[1] Plaintiff's request that the case be reversed and remanded for the payment of benefits is denied. As the Court has already made clear, Plaintiff has not established her entitlement to benefits. Further, there are issues of fact that need to be addressed concerning Plaintiff's credibility.

IV.

CONCLUSION

For these reasons, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this memorandum opinion and order.

IT IS SO ORDERED.

DATED: <u>January 13, 2011</u>.


_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\POLANCO, 5550\Memo_Opinion.wpd